## In re Pennsylvania Trust Company

*James F. Marx,* for petitioner.

*S. E. Bertolet* and *J. W. Bertolet,* for respondent.

SCHAEFFER, P. J., February 27, 1937.—The Pennsylvania Trust Company, of Reading, having become insolvent, ceased to exercise its charter powers, and in December 1934 petitioned this court for a decree permitting it to resign as fiduciary in the several trusts and estates in which it had been so acting under the jurisdiction of this court, and appointing the Berks County Trust Company intervening trustee thereof. The court, after hearing, on January 5, 1935, granted the prayer of said petition. Thereafter, the Berks County Trust Company was duly appointed permanent trustee or guardian of most of the estates which had been so transferred to it as intervening trustee. Among the assets of the several trusts are many mortgages upon property, not only in Berks County, but also in Cambria, Blair and other counties. The Berks County Trust Company has now filed its petition, setting forth that, for the proper administration of said trusts and estates, it is necessary that it have the original applications made to The Pennsylvania Trust Company for the loans now secured by said mortgages, and also the briefs of title prepared or caused to be prepared by The Pennsylvania Trust Company before said mortgage loans were made and upon the faith of which said loans were granted, and praying, therefore, that The Pennsylvania Trust Company be required to deliver said applications and briefs of title to it. To this, not only The Pennsylvania Trust Company, but also the liquidating trustees of said company have filed an answer in which they allege that the applications and title briefs are not necessary for the proper administration of the several estates, that the title briefs are property of value belonging to the commercial department of The Pennsylvania Trust Company and not to the trust department of The Pennsylvania Trust Company, and were paid for by the commercial department of the trust company.

From the testimony produced at the hearing had upon the petition and answer, we find the following facts:

1. The procedure leading to the making of a mortgage loan by The Pennsylvania Trust Company was substantially as follows: The owner of real estate desiring a loan made application in writing, either directly to the trust company in Reading or to its agent in Altoona, Johnstown, or elsewhere, and upon the approval of the application by the company's executive committee the applicant paid a service charge, the amount of which varied with the amount of the loan and which covered the cost of the preparation of the papers and sometimes the cost of the examination of the title; at other times, the applicant paid the cost of the examination of the title in addition to the service charge.

2. After the title had been certified as approved, the loan was made by the trust company, usually out of its own funds, and the mortgage taken by the trust company as mortgagee.

3. The mortgages here in question were thereafter tranferred by certificate or office notation, without assignment, to the several trust estates or mortgage pools, and the face value of the mortgage, plus interest, was thereupon charged against such trust or pool and credited to the corporation account of the trust company.

4. The title briefs were not filed with the several mortgages, but were filed separately and were regarded as part of the title plant of the trust company.

5. The original applications for the loans were filed separately.

6. The fire insurance policies covering the mortgaged premises were kept with the bonds and mortgages and have been delivered to the Berks County Trust Company.

7. Before any of the mortgages here in question was executed, The Pennsylvania Trust Company had, at a large cost, acquired, by purchase or by having title briefs made, a considerable and valuable title plant, which covered titles mostly in Berks County. This title plant we

may consider as composed of the master briefs of title.

8. In searching the title of the applicant for any of the loans secured by any of the mortgages here in question, the examination of the title was carried back to these so-called master briefs of title.

9. It is necessary for the proper execution of its trust that the Berks County Trust Company, as substituted trustee, should have the original applications for the loans and the briefs of title to the properties upon which the mortgage loans are secured.

### Discussion

Before The Pennsylvania Trust Company invested its own money in a mortgage, it rightly required a search of the applicant's title to the premises tendered as security. And in the exercise of its business discretion the trust company required the applicant to pay the cost of that title search. But, from the attitude now assumed in endeavoring to show a distinction between the right-hand and the left-hand pants' pockets of the company, that is, between the commercial and the trust departments, we must conclude that the trust company, when it invested trust funds in these mortgages, was not as careful as when it invested its own funds. For, although the commercial department required briefs by which the exact status of the title and the mortgage was made manifest, no evidence of the title was given to the trust department. Of course, The Pennsylvania Trust Company was but one institution and its trust officers had full access to all its records, no matter in which so-called department they were kept.

It is clear that the new trustee, a stranger to the applicant and to the transaction, should, for the proper discharge of its duties in safeguarding the investments, have the benefit of as much of the information possessed by the original trustee as possible. The title briefs here in question were paid for not by trust company funds, but by funds furnished by the applicant. The new trustee is not

asking that The Pennsylvania Trust Company deliver to it the latter's title plant; but it does want those briefs of title that were prepared as a step in passing upon the applications for the loans which, when granted, were secured by the mortgages which The Pennsylvania Trust Company has transferred to the new trustee. In fact, the application and title briefs, just as the mortgages and bonds themselves, came into existence as part of the transaction which culminated in the loan of certain of the funds of trusts held by The Pennsylvania Trust Company upon real estate security. All of these papers and instruments, together with the fire insurance policies, constitute the tangible res of the trust. And, as it was the duty of The Pennsylvania Trust Company in making such investment of trust funds to have such records of the transaction in its possession, so is it equally the duty of the substituted trustee to bring into its custody the same evidences of title: See 3 Bogert on Trusts and Trustees, sec. 583.

The applications for the loan, the brief of title, the bond and mortgage and the insurance policies, after trust funds had been invested in the mortgages, were not the property of The Pennsylvania Trust Company in its own right but as trustee or guardian, as the case might be. So also these papers, upon delivery, will not become the property of the Berks County Trust Company in its own right but as substituted trustee or guardian. Upon the payment of the mortgage loan, it would logically follow that these papers become the property of the person who makes such payment.

### Conclusions of law

1. The original applications for the mortgage loans and the briefs of title made at the time said loan was granted or upon the faith of which said loan was made, are in the nature of muniments of title like unto the mortgage, bond, and insurance policy, and are part of the res of the trust, the funds of which have been invested in the mortgage.

152

2. Said applications and briefs of title, not including the so-called master briefs, should be delivered by The Pennsylvania Trust Company and the liquidating trustees of The Pennsylvania Trust Company, as the case may be, to the Berks County Trust Company, as substituted trustee.

3. The Pennsylvania Trust Company should pay the costs of this proceeding.

And now, to wit, February 27, 1937, the rule to show cause why certain documents should not be surrendered is made absolute.